AMERICAN SAMOA GOVERNMENT

v.

FALE'UPOLU MALOTA, Defendant

High Court of American Samoa
Trial Division

CR No. 24-87

August 6, 1987

Before KRUSE, Associate Justice; TAUANU'U, Chief Associate Judge, and OLO, Associate Judge.

Counsel: For the Government, James Doherty,
Assistant Attorney General
For Defendant, Michael Bennett, Assistant
Public Defender

Opinion and Order on Motion to Suppress:

Defendant moves to suppress the use of certain inculpatory statements he made to the police, as well as the introduction of certain physical evidence he turned over to the police consequent to his furnishing the referenced statements. The grounds of the motion are that the police had induced defendant to make these statements after leading him to believe "that the matter would be taken care of and settled."

The testimony was thoroughly conflicting and, based on the evidence presented, the Court makes the following findings:

1. On or about May 12, 1987, defendant was picked up by two police officers at or around 9:30 a.m. and taken to the police station for questioning in connection with a burglary complaint the officers were investigating.

2. Prior to picking up the defendant, the officers had interviewed the victim and others at the crime scene. On the basis of these interviews, the officers determined the defendant to be the primary suspect, but had also determined insufficient probable cause.

3. The defendant, a young man without prior experience with the criminal process, complied peaceably with being taken to the police station. He was without any reservation that he had any choice in the matter.

4. On the way to the station, defendant was aware of the general reason the officers wanted to talk to him, having been apprised by the officers of the purpose of their investigation. He was also asked by one of the officers if he had been in prison before, to which he answered, "no."

5. At the station, the officers accompanied the defendant to one of their interview rooms and left him there under the supervision of a Lieutenant on watch at the time. The Lieutenant supplied the defendant a form and directed that he make a written statement. The defendant documented an "exculpatory" statement, and after completing the same, he handed the writing to the Lieutenant. Thereupon he was told to write some more, as the page was not filled with detail. Defendant did no further writing, stating that he had written all that he knew.

6. Some forty-five to sixty minutes after leaving the defendant, the two officers who had accompanied him to the station returned to the defendant. It was the testimony of one of the officers that they had initially left the defendant in order to check at the I.D. Division whether there was any record on the defendant. They found none.

7. The officers then subjected the defendant to questioning. Defendant was led to believe that the focus of the exercise was the return of stolen property to the owner; that this matter would be taken care of then and there; and that the proceedings would advance no further.

8. The defendant finally, around the hour of one o'clock p.m., orally admitted involvement in the burglary. The officers then gave the defendant the _Miranda_ warnings. He was given a form to this effect to acknowledge by signing. He was also supplied a form to make a written statement, whereupon the defendant documented an "inculpatory" statement.

9. The officers, having completed the usual mugging procedures, drove the defendant home and the latter supplied the officers with certain items said to have been obtained from the victim.

10. Some one month later, defendant finds to his surprise and annoyance that the police did not keep their side of the agreement. He was served with an information and warrant for his arrest, giving rise to these proceedings.

CONCLUSIONS

It is the conclusion of the Court that the inculpatory statements of the defendant were obtained in the context of a "custodial interrogation." On the facts, we find that while the defendant was not formally arrested, he was unlawfully detained without probable cause.

The testifying officers' testimony to the contrary was found to be inconsistent in several instances. Firstly, it was the officers' position that the defendant volunteered a preference to be questioned at the police station, as opposed to being questioned at home. They assert that the defendant had the choice to accompany them to the station like any volunteer witness, and that the

defendant had the choice to depart the station at any time.

These are conclusions on the part of the officer, in retrospect. Firstly, the testifying officer had stated unequivocally that when they arrived at the station, they did not leave the defendant alone at any time, and that the defendant confessed voluntarily while looking the officer "straight in the eye." On the other hand, and as a result of cross-examination, one of the officers subsequently admitted that they had initially left the defendant to the supervision of the Lieutenant, while they first checked out the I.D. Division. When confronted with this variance in testimony, the officer attempted rehabilitation by saying that what he meant by being with the defendant all the time was that they, the officers, did not leave the police building at all, although they visited another room therein.

Secondly, the Court is not persuaded that the officers' actions in leaving the defendant in the interview room for some forty-five to sixty minutes, without any explanation to the defendant, is consistent with the situation of a volunteer witness who is expected to have something in aid of police investigation. The atmosphere set was "hostile" in nature as opposed to a cooperative exercise. An exculpatory written statement was apparently not acceptable, and the interview continued until an inculpatory one was secured.

Thirdly, the testifying officer also admitted on the stand that they had requested the Lieutenant to keep an eye on defendant in case he left the station. When confronted with the suggestion that the Lieutenant's role was thus inconsistent with any choice on the defendant's part in terms of leaving the station, the officer recanted rather poorly with the alternative that the Lieutenant was merely requested to keep the defendant company in case the latter became "bored" with the waiting. This offer of hospitality is hardly impressive in the light of the fact that the defendant was awakened from sleep when picked up by the police and presumably he missed breakfast that morning. Moreover, the interrogation overlooked the lunch hour, and there was no hint from anybody to the defendant that he was able to go to lunch, or indeed, free to go home if he wanted to.

To the contrary, it is the opinion of the Court that the officers had a predisposition on the

-104-

facts (the defendant was a prime suspect) and the setting of the interrogation, as well as the interrogation itself, was designed not so much to elicit the suspect's version of the situation as to elicit a confession to a preconceived police version.

An oral confession did in fact arise, subsequent to an exculpatory written statement, without any appreciation whatsoever by the defendant that he had Miranda rights. We accept the defendant's version of the facts whereby he was lulled into taking the officers into confidence, on the belief that the matter would be resolved at the station. The attempted Miranda warning given after this confession, is, in the Court's view, meaningless in the circumstances. To advise someone, for instance, that he has a right against self-incrimination after the fact of incrimination is utterly without purpose.

Secondly, the written inculpatory statement made by the defendant after the warnings were given (the Miranda form and the written statement concerned evidenced that these forms were handed the defendant during the course of a ten to fifteen minute interval) is hopelessly tainted by the contemporaneity of occurrences, so that it may not be seen as the product of rational choice, and thus voluntary, under the circumstances.

It is the Court's conclusion that any and all inculpatory statements made by the defendant to the police, whether written or oral, should be suppressed, and that all evidence obtained by the officers from the defendant consequent to the confessions shall be inadmissible herein.

It is so ORDERED.